```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
CABLEVISION SYSTEMS NEW YORK      :
CITY CORPORATION,
                                   :
          Plaintiff,
                                   :    REPORT AND RECOMMENDATION

          -against-                :    04 Civ. 9863 (RCC)(GWG)

CLINTON PIERCE,                    :

          Defendant.               :
------------------------------------------------------x
```

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

I. BACKGROUND

On December 15, 2004, plaintiff Cablevision Systems New York City Corporation ("Cablevision") filed a complaint against defendant Clinton Pierce. The complaint sought damages for the unauthorized interception of Cablevision's telecommunication signals in violation of 47 U.S.C. §§ 553(a)(1) and 605(a) of the Communications Act of 1934. Pierce was served but did not answer. Cablevision thereafter submitted an application for a default judgment, whereupon the Clerk issued a Certificate of Default. On June 10, 2005, the District Judge granted Cablevision's request for a default judgment and referred the case to the undersigned for an inquest regarding damages. See Docket #5.

By Order dated June 14, 2005, this Court directed both parties to submit findings of fact and conclusions of law regarding damages. See Scheduling Order for Damages Inquest, dated June 14, 2005 (Docket #6). A copy of the Order was mailed to Pierce. In accordance with that Order, Cablevision filed its proposed findings of fact and conclusions of law seeking to recover statutory damages in the amount of $10,000.00 and attorney's fees in the amount of $3,985.50.

Pierce's submissions were due on or before August 29, 2005. As of this date, Pierce has made no submission at all.

Cablevision did not request a hearing on the issue of damages. The Second Circuit has held that an inquest into damages may be held on the basis of documentary evidence alone, "as long as [the Court has] ensured that there was a basis for the damages specified in [the] default judgment." Fustok v. ContiCommodity Servs., Inc., 873 F.2d 38, 40 (2d Cir. 1989); accord Action S.A. v. Marc Rich & Co., 951 F.2d 504, 508 (2d Cir. 1991). As Cablevision's submission includes an affidavit and documentary evidence, no hearing is required. The following findings of fact and conclusions of law are based on that submission. In addition, in light of the defendant's default, Cablevision's properly-pleaded allegations, except those relating to damages, are accepted as true. See, e.g., Cotton v. Slone, 4 F.3d 176, 181 (2d Cir. 1993) ("factual allegations are taken as true in light of the general default judgment . . . "); Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992), cert. denied, 506 U.S. 1080 (1993); Time Warner Cable of New York City v. Barnes, 13 F. Supp. 2d 543, 547 (S.D.N.Y. 1998).

II. DISCUSSION

    A. Findings of Fact and Conclusions of Law

Cablevision is a Delaware Corporation with its principal place of business at 1111 Stewart Avenue, Bethpage, New York, and 500 Brush Avenue, Bronx, New York. Complaint ("Compl.") (Docket #1), ¶ 4. Defendant Pierce is an individual having a principal residence at 3563 Bainbridge Avenue, Apartment 4B, Bronx, New York. Id. ¶ 5.

Cablevision is a cable television operator authorized to construct, operate, and maintain

cable television systems in various areas in New York City, including the Bronx, where defendant resides. See Affidavit of Donald Kempton, dated June 30, 2005 ("Kempton Aff.") (to be docketed), ¶ 2. Cablevision receives signals for some of its services from orbiting satellites and local radio towers. Id. ¶ 9.

Cablevision offers paying customers cable television services in the form of different tiers of programming packages. Id. ¶ 3. The "Basic" level of service provides customers with primarily broadcast stations. Id. "Family" service is a higher level of service that includes all of Cablevision's programming services, with the exception of its "premium" and pay-per-view programming services. See id. ¶ 4. Cablevision also offers its customers "premium" programming (such as The Movie Channel, Showtime, and Cinemax). Id. ¶ 3. Cablevision's residential subscribers may also elect to subscribe to one or more additional "premium" programming services for an additional monthly charge per service. Id. ¶ 4. Premium services range in price from approximately $1.95 to $14.95 per month per service; the full package of premium services, not including pay-per-view events, is approximately $80 per month. Id.

Additionally, Cablevision offers customers programming services, which include movies, sporting events, and other entertainment, that they may order on a pay-per-view basis. Id. ¶ 5. The pay-per-view services typically range in price from approximately $3.95 to $54.95 per selection. Id. The aggregate value of each pay-per-view event offered over a typical month, assuming each event is viewed once, is approximately $400.00. Id.

An individual wishing to purchase Cablevision service is provided with a piece of equipment known as a "converter-decoder" box, which authorizes specific levels of Cablevision programming. Id. ¶ 8. To prevent subscribers from receiving programming services for which

3

they have not paid, Cablevision encrypts or "scrambles" the signals for its services. See id. ¶ 9. When in a scrambled mode, programming services not purchased remain distorted and not viewable on the subscriber's television set. Id. The converter-decoder box decodes or "descrambles" the scrambled Cablevision services according to the level of programming purchased. Id. ¶ 10. Each subscriber is entitled to receive only the level and amount of programming that the subscriber has selected and purchased. Id. ¶ 7.

Despite this scrambling technology, it is possible for an individual to intercept and receive Cablevision signals without paying for it. See id. ¶ 15. An individual can either install an unauthorized converter-decoder or modify his or her own converter-decoder, permitting the individual to intercept signals and view unauthorized (and unpaid-for) programming. Id.

Cablevision's claims against Pierce arose following the investigation of a business known as Explorer Electronics ("Explorer"), located in Indiana. Id. ¶ 16. Explorer was a manufacturer of "pirate" converter-decoders, and was the subject of an investigation that resulted in the seizure of its products and business records. See id. ¶¶ 17-18. One such record was of a transaction between Explorer and Pierce, on or about November 21, 2002, in which Pierce purchased "pirate" descrambling equipment for $217. Id. ¶¶ 19, 21; Transaction Record, dated Nov. 21, 2002 (reproduced as Ex. C to Plaintiff's Memorandum of Law in Support of Damages Inquest, dated July 29, 2005 (to be docketed)).

On October 5, 2001, Pierce had become -- and remained as of July 29, 2005 -- a Cablevision customer, subscribing to the Family level of service with HBO at approximately $62 per month. See id. ¶ 20; Plaintiff's Proposed Findings of Fact and Conclusions of Law, dated July 29, 2005 ("Proposed Findings"), ¶ 18.

Pierce used or distributed the unauthorized converter-decoder he purchased to circumvent the security features of Cablevision's system, to descramble all of Cablevision's premium, pay-per-view, and other scrambled programming, and to gain access to Cablevision's programming services without paying for such services. See Compl. ¶¶ 20, 21.

B. Statutory Damages

The unauthorized interception and reception of any cable television programming services that originate and are delivered by satellite or any other means is an express violation of 47 U.S.C. §§ 553(a)(1)[1] and 605(a).[2] See, e.g., Barnes, 13 F. Supp. 2d at 547-48 (citing Int'l Cablevision, Inc. v. Sykes and Noel, 75 F.3d 123, 133 (2d Cir. 1996)). Pierce violated both sections by using or assisting in the use of an unauthorized converter-decoder to intercept and receive Cablevision's cable television programming services. See Compl. ¶ 24.

Where a defendant's conduct has violated both sections 553 and 605 of the Communications Act, a plaintiff may recover damages under one of those sections only. See, e.g., Sykes, 75 F.3d at 129; Barnes, 13 F. Supp. 2d at 548. Cablevision has elected to recover under the damages provision of section 605. See Proposed Findings ¶ 36. Section 605 permits a damage award between $1,000 and $10,000. 47 U.S.C. § 605(e)(3)(C)(i)(II). Cablevision has

---

[1] 47 U.S.C. § 553(a)(1) provides in pertinent part that:

> No person shall intercept or receive . . . any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law.

[2] 47 U.S.C. § 605(a) provides in pertinent part that:

> No person not being authorized by the sender shall intercept any radio communication and divulge or publish the . . . contents . . . of such intercepted communication to any person.

requested the statutory maximum of $10,000. See Proposed Findings ¶ 37. As Cablevision has proprietary interests in the intercepted communications, see id. ¶ 32, it is entitled to bring this action as a "person aggrieved" within the meaning of 47 U.S.C. §§ 605(e)(3)(A) and 605(d)(6).

Cablevision's submission establishes that Pierce engaged or assisted in the unauthorized reception and interception of Cablevision's cable television programming services by his use of a "pirate" cable television descrambling and decoding device. See Complaint ¶ 20; Kempton Aff. ¶¶ 24-25. Pierce therefore violated 47 U.S.C. § 605. The Court is to award statutory damages to a victimized plaintiff "as the court considers just." See § 605(e)(3)(C)(i)(II); Time Warner Cable of New York City v. Taco Rapido Restaurant, 988 F. Supp. 107, 111 (E.D.N.Y. 1997). The statutory language provides no further guidance on how damages should be awarded.

One consideration employed by courts in determining damages is the amount of revenue that the plaintiff lost and the defendant saved. See Time Warner Cable of New York City v. Fland, 1999 WL 1489144, at *3 (S.D.N.Y. Dec. 3, 1999). Because of Pierce's failure to answer the complaint or make any submission on the issue of damages, it has been impossible to determine either the actual amount of revenue lost by Cablevision and/or the amount of money saved by Pierce. Cablevision notes that the pay-per-view events available to Pierce – assuming each event is viewed only once – cost approximately $400.00 per month. See Kempton Aff. ¶ 5. These consist of events costing from $3.95 to $54.95 per selection. If Pierce watched each week one of the high end selections and two of the low-end selections, the total benefit to him would be approximately $250 per month or $3000 per year. Thus, for the approximately three years Pierce has owned the "pirate" device, Pierce would have received a benefit valued at $9000.

Regardless of the actual direct damage suffered by Cablevision as a result of signal

6

interception, there are indirect damages as well. See Kempton Aff. ¶¶ 29-30. These unauthorized interceptions cause signal degradation and leakage, which violates Federal Communications Commission regulations, and could result in fines and sanctions imposed on Cablevision. Id.

Another factor relevant to an award of damages is its deterrent value. See Time Warner Cable of New York City v. Barbosa, 2001 WL 118608, at *6 (S.D.N.Y. Jan. 2, 2001). On a national scale, cable piracy results in revenue losses of approximately $5.1 billion, exclusive of pay-per-view service theft. See Kempton Aff. ¶ 13. This revenue loss directly affects the franchise fee of Bronx County, whose payment is based on the gross revenues of Cablevision. Id. ¶ 29. Deterring other potential violators weighs strongly in favor of an increased award.

The wilfulness of the defendant's conduct also bears on the Court's consideration of the amount of statutory damages. See Cablevision Systems New York City Corp. v. Faschitti, 1996 WL 48689, at *2 (S.D.N.Y. Feb. 7, 1996). Again, Pierce has refused to avail himself of the opportunity to address this or any other factor relevant to damages. Thus, the Court assumes that Pierce's conduct has been wilful.

In sum, all the factors weigh in favor of an elevated award. Had Pierce contested any aspect of damages, the Court would likely have awarded something less than the maximum permitted by statute. Pierce, however, has chosen to ignore this Court's offer to be heard on the issue of damages. Thus, the Court draws every inference against him. In light of the fact that there is a reasonable basis for assuming $9,000 in actual damages, and noting that case law has frequently doubled awards of actual damages to provide a penalty that accounts for the need for deterrence, see, e.g., Cablevision Systems v. Rosa, 2002 WL 1446942, at *3 (S.D.N.Y. Apr. 3,

2002), Cablevision should be awarded judgment in the maximum amount permitted by statute, i.e., $10,000. See also Faschitti, 1996 WL 48689, at *2 (granting the statutory maximum based on the need for deterrence, the defendant's wilful conduct, and the defendant's failure to appear).

     C. Attorney's Fees

Section 605 charges a court to "direct the recovery of full costs, including awarding reasonable attorney's fees to an aggrieved party who prevails." 47 U.S.C. § 605(e)(3)(B)(iii). In New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1154 (2d Cir. 1983), the Second Circuit held that a party seeking an award of attorney's fees must support that request with contemporaneous time records that show, "for each attorney, the date, the hours expended, and the nature of the work done."

Cablevision has submitted an affirmation by its attorneys, Lefkowitz, Louis, Sullivan & Hogan, indicating it has incurred attorney's fees of $3,985.50 in prosecuting this action. See Affirmation of Melinda M. Dus, dated July 29, 2005 ("Dus Aff."), ¶ 11. The Affirmation sets forth: (a) the names of the attorneys and paralegals who worked on this matter; (b) the professional experience of those persons; (c) the number of hours each devoted to this action and the nature of the work they performed; and (d) the hourly rate at which each was compensated. See Dus Aff. ¶¶ 3-10, *6-*8.[3] Cablevision has further submitted contemporaneous time records reflecting the number of hours expended and the nature of the work by each of the attorneys and paralegals of the law firm. See Exhibits D, E, F, G, and H to Dus Aff.

Cablevision's submission states that attorneys at the law firm expended the following

---

[3]The paragraph following paragraph 8 of the Affirmation is mistakenly denominated paragraph "6," which is followed by paragraphs continuing in sequential order. An asterisk indicates the second paragraph 6, 7, or 8 in the Affirmation.

number of hours prosecuting this action against Pierce at the following hourly rates of compensation:

| Attorney/Paralegal | Total Hours | Hourly Rate | Total |
|---|---|---|---|
| Wayne R. Louis, Esq. | 7.20 | 200 | 1440.00 |
| Patrick J. Sullivan, Esq. | 4.90 | 200 | 980.00 |
| Michael G. McAlvin, Esq. | 1.10 | 165 | 181.50 |
| Susan A. Weindler | 2.0/1.2 | 85/95 | 284.00 |
| | | **Total** | $2,885.50 |

Dus Aff. ¶¶ *6, *7, *8, 9, and 10.[4]

These hours and billing rates are reasonable. See Barnes, 13 F. Supp. 2d at 549 (award of $2,651.25 in attorney's fees); Faschitti, 1996 WL 48689, at *3 ($3,000). Thus, Cablevision should be awarded attorney's fees in the amount of $2,885.50.

Conclusion

For the reasons set forth above, Cablevision should be awarded judgment against the defendant in the amount of $12,885.50.

## PROCEDURE FOR FILING OF OBJECTIONS
## TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have ten (10) days from service of this Report to file any written objections. See also Fed. R. Civ. P. 6. Such objections (and any responses to objections) shall be filed with the Clerk

---

[4]This chart omits certain charges that Cablevision and its attorneys agreed in advance would be billed on a "per task basis," Dus Aff. ¶ 8 – for example, for drafting the complaint – because Cablevision's attorneys have provided no contemporaneous record as to how much time they actually spent on those tasks. See, e.g., Cablevision Systems New York City Corp. v. Landron, 2003 WL 430347, at *4 (S.D.N.Y. Jan. 21, 2003).

of the Court, with copies delivered to the Hon. Richard C. Casey, 500 Pearl Street, New York, New York 10007, and to the undersigned at 40 Centre Street, New York, New York 10007. Any requests for an extension of time to file objections must be directed to Judge Casey. The failure to file timely objections will result in a waiver of those objections for purposes of appeal. See Thomas v. Arn, 474 U.S. 140, 144-45 (1985).

Dated: New York, New York
October 27, 2005

_____
GABRIEL W. GORENSTEIN
United States Magistrate Judge

Copies sent to:

Melinda M. Dus, Esq.
Lefkowitz, Louis, Sullivan & Hogan, L.L.P.
350 Jericho Turnpike, Suite 300
Jericho, New York 11753

Clinton Pierce
3563 Bainbridge Avenue
Apartment 4B
Bronx, New York 10467

Hon. Richard C. Casey
United States District Judge

of the Court, with copies delivered to the Hon. Richard C. Casey, 500 Pearl Street, New York, New York 10007, and to the undersigned at 40 Centre Street, New York, New York 10007. Any requests for an extension of time to file objections must be directed to Judge Casey. The failure to file timely objections will result in a waiver of those objections for purposes of appeal. See Thomas v. Arn, 474 U.S. 140, 144-45 (1985).

Dated: New York, New York
October 27, 2005

GABRIEL W. GORENSTEIN
United States Magistrate Judge

Copies sent to:

Melinda M. Dus, Esq.
Lefkowitz, Louis, Sullivan & Hogan, L.L.P.
350 Jericho Turnpike, Suite 300
Jericho, New York 11753

Clinton Pierce
3563 Bainbridge Avenue
Apartment 4B
Bronx, New York 10467

Hon. Richard C. Casey
United States District Judge